IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ANNA ANDERSON, | ) |
| | ) |
| | ) CIVIL ACTION NO: |
| Plaintiff, | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| THE CITY OF NORFOLK, VIRGINIA | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, Anna Anderson ("Anderson" or "Plaintiff"), by counsel, for her Complaint against Defendant, The City of Norfolk (the "City" or "Norfolk" or "Defendant"), alleges as follows:

### I.   THE PARTIES

1. Plaintiff Anderson is a natural person, and at all times relevant hereto was, a citizen of the Commonwealth of Virginia, residing in the city of Norfolk, Virginia.

2. Defendant the City of Norfolk is a body politic and corporation created and existing under the laws of the Commonwealth of Virginia.

### II.   JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331.

4. Venue properly lies in this Court because the controversy involves Defendant's behavior at Plaintiff's place of employment, in the Eastern District of Virginia.

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.   Prior to instituting this suit, Anderson formally filed an administrative claim with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC) on March 24, 2022.[1] A true and correct copy of the Charge of Discrimination is attached to this complaint and incorporated by reference as Exhibit "A."  Plaintiff's Charge of Discrimination specifically claims religious based discrimination in violation of Title VII of the Civil Rights Act of 1964.

6.   The EEOC failed to resolve the claim and issued a right-to-sue letter dated August 8, 2023.  A true and correct copy of the right-to-sue letter is attached to this complaint and incorporated by reference as Exhibit "B."  Plaintiff has filed her complaint within 90 days from the date she received her notice authorizing the right to bring this action.

### IV.  STATEMENT OF FACTS

7.   This case arises under Title VII of the Civil Rights Act as amended.

8.   In or about 2008, Anderson began working for the City.  In 2021 she was employed by the City's Department of Human Services (the "Department").  The Department is a subordinate department of the City and is not a distinct legal entity.  The Department oversees a number of services for the citizens of Norfolk.  Specifically, Anderson was employed by the Department as a Human Services Aide working with the Benefits and Self-Sufficiency Division.

9.   On August 12, 2021, the City instituted a COVID-19 testing policy to go into effect October 4, 2021.

10.   That policy required all employees (teleworkers and those individuals coming into their worksites) to be vaccinated against COVID-19 by October 4, 2021.

---

[1] Anderson initiated her complaint with the EEOC in or about October 2021; her EEOC Charge of Discrimination was formalized and filed in March 2022.

11.     The City promised that upon request, reasonable accommodations would be considered for those employees unable to test due to a disability or sincerely held religious belief, practice or observance.

12.     The City further promised that it would work with employees to endure compliance with testing and not begin to enforce the corrective action process for current employees for violations of this policy until October 11, 2021.

13.     Until October 2021 (for 13 years), Anderson was a model employee meeting and satisfying all of her employer's expectations.

14.     On September 30, 2021, Anderson informed the City's Programs Manager, Valerie Hurt ("Hurt"), via email that would be submitting an accommodation request to Human Resources.

15.     On October 1, 2021, Plaintiff properly requested a religious accommodation to be able to have a weekly health screening by a healthcare provider.

16.     Plaintiff's request specifically stated: "I don't believe in any medical intervention that may harm my God given immune system. I don't believe in any intrusion of my body which is my temple."

17.     On October 8, 2021, the City's Employee Relations Analyst I, Jessica Austin ("Austin"), told Plaintiff that her faith was not in question.

18.     On October 12, 2021, Plaintiff emailed Austin saying that she was having a hard time finding a healthcare provider that could administer weekly health screenings. Specifically, Anderson emailed:

> Good morning, Jessica,
> I was only able to get an appointment at my doctor's office for October 22nd. The doctor was not in the office to discuss whether a weekly screening would be feasible. I called several other medical offices and have not yet to find one that can accommodate my request. Some of my messages haven't been returned yet. I am continuing to search though it has proven to be an arduous effort.

> Are there any accommodations you can offer me in respect to my religious exemption?
> Respectfully,
> Anna Anderson

19. Austin did not respond to Anderson's inquiry.

20. The City did not engage Plaintiff in any discussion concerning alternative accommodations including, but not limited to, wearing a face mask, working at a social distance from others, working a modified shift, getting periodic tests, teleworking or accepting a reassignment -- none of which, would have constituted an undue hardship on the City.

21. Instead, Anderson was placed on leave without pay that same day, October 12, 2021.

22. On October 18, 2021, Anderson emailed Austin again asking for a religious exemption accommodation, stating in pertinent part:

> I seek to immediately resume and continue my job and the work I have been doing for the last 13 plus years and doing the same throughout the last eighteen months during the Covid 19 pandemic – without harassment, intimidation, discrimination, coercion and retaliation, such as being put on the punitive and financial hardship of Administrative Leave Without Pay.  I have demonstrated that I have been able to work 5 days a week in the office for the past 18 months safely, efficiently, and effectively without posing any health issues to myself, my coworkers, or the public . . . . Be advised that I have filed a Complaint of Discrimination & Retaliation with the EEOC. . . . Please let me know within 72 hours and/or by 10/21/2021 whether my corrected Religious Exemption Accommodation is accepted and my soonest possible return to work date. In the meeting on (10/12/21), Ms. Valerie Hurt said that I am not expected to get tested for covid per acknowledged Religious Exemption.
> Again, time is of the essence.

23. On October 25, 2021, the City informed Anderson that she was expected to provide a negative COVID 19 test on a weekly basis.

24. That same day, October 25, 2021, Anderson again requested via email to Hurt a religious exemption and accommodation – in addition to an explanation as to why her prior request for accommodation was denied.  Anderson also reiterated that she had filed a "Complaint of Discrimination & Retaliation with the EEOC."

25.     Anderson was aware of a multitude of potential work arrangements that could have accommodated her, including working from home.  Accordingly, there would neither have been an undue hardship nor any hardship at all for the City to accommodate Anderson's faith.

26.     On November 18, 2021, the City fired Anderson.

27.     The City informed Anderson that she was fired due to not testing weekly for COVID 19.

28.     Prior to firing her, the City never indicated in any way that they doubted either the religious nature of Anderson's beliefs or her sincerity in holding them.

29.     By putting Anderson through this dismissal process and eventually terminating her, the City, through its decision-makers, intentionally discriminated against her based on her religion, and refused to accommodate her religious practices and beliefs.

## IV.  CLAIMS

### COUNT I
Violation of Title VII of the Civil Rights Act of 1964
Religious Discrimination / Failure to Accommodate

30.     Plaintiff repeats and realleges each and every Paragraph of this Complaint as thought fully set forth herein.

31.     Pursuant to Title VII of the Civil Rights Act as amended, an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

32. Title VII makes it "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).

33. Anderson is within a class protected under Title VII because she held a sincere, religious belief that prevented her from receiving the COVID-19 vaccine, which was mandated by the City. This raised a direct conflict between her faith and her employer's policy.

34. Anderson timely informed her employer, the defendant in this matter, of her religious beliefs and the manner in which its requirements conflicted with those beliefs.

35. Anderson timely requested a religious accommodation.

36. In light of the multitude of potential work arrangements that could have accommodated Anderson, there would neither have been an undue hardship nor any hardship at all for the City to accommodate Anderson's faith.

37. Nevertheless, in an egregious disregard for its obligations under Title VII, the City failed to offer any reasonable accommodation for Anderson's religious faith, to accept her requested accommodation, or to engage in conferring on possible accommodations.  Instead, it fired her.

38. The City's employees outside the protected class ("religious believers") were not forced to choose between their jobs and their religious beliefs because they do not have religious beliefs preventing COVID-19 vaccination and their religious beliefs were not threatened by an employer mandate requiring them to forfeit their religious beliefs to maintain employment.

39. The City refused to engage in  a good faith effort to accommodate Anderson's faith, and it refused to follow its own policy.

40. But despite knowing the obligations it owed to Anderson, the City brazenly discriminated against Anderson and failed to accommodate her faith, acting with malice and/or reckless indifference to her Title VII rights.

41. The City's discrimination and failure to accommodate her religion has caused her a significant level of financial and emotional harm.

42. Because of the City's religious discrimination, failure to accommodate, and wrongful termination, Anderson suffered loss of the income and benefits he would have received from the City, loss of other compensatory and out-of-pocket damages, lost back wages, lost future wages and benefits, compensatory damages, and reasonable attorneys' fees and costs incurred in the matter.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### Religious Discrimination / Retaliation

43. Plaintiff repeats and realleges each and every Paragraph of this Complaint as thought fully set forth herein.

44. Title VII makes it an unlawful employment practice for an employer to retaliate against an employee who asserts her rights and/or files – or threatens to file -- a charge of discrimination with the EEOC.

45. Anderson is within a class protected under Title VII because she held a sincere, religious belief that prevented her from receiving the COVID-19 vaccine, which was mandated by the City. This raised a direct conflict between her faith and her employer's policy.

46. Anderson timely informed her employer, the defendant in this matter, of her religious beliefs and the manner in which its requirements conflicted with those beliefs.

47. Anderson timely requested a religious accommodation.

48. Anderson timely informed her employer that she had filed a charge of discrimination with the EEOC.

49. In light of the multitude of potential work arrangements that could have accommodated Anderson, there would neither have been an undue hardship nor any hardship at all for the City to accommodate Anderson's faith.

50. Nevertheless, in an egregious disregard for its obligations under Title VII, the City failed to offer any reasonable accommodation for Anderson's religious faith, to accept her requested accommodation, or to engage in conferring on possible accommodations. Instead, it retaliated against her by firing her.

51. The City refused to engage in a good faith effort to accommodate Anderson's faith, and it refused to follow its own policy.

52. Despite knowing the obligations it owed to Anderson, the City brazenly discriminated against Anderson and retaliated against her with malice and/or reckless indifference to her Title VII rights.

53. The City's retaliation has caused Plaintiff significant level of financial and emotional harm.

54. Because of the City's religious discrimination and retaliation, Anderson suffered loss of the income and benefits he would have received from the City, loss of other compensatory and out-of-pocket damages, lost back wages, lost future wages and benefits, compensatory damages, and reasonable attorneys' fees and costs incurred in the matter.

## COUNT III
Violation of 42 U.S.C. § 1983 – Free Exercise Clause

55. Plaintiff repeats and realleges each and every Paragraph of this Complaint as thought fully set forth herein.

56. The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . . prohibiting the free exercise" of religion. U.S. Const. amend. 1. The Free Exercise Clause applies against states and state actors.

57. State action that burdens the exercise of religion is subject to strict scrutiny if it is not both neutral to religion and generally applicable irrespective of religion.

58. The City's COVID-19 vaccine mandate burdened Plaintiff's exercise of religion. Plaintiff's sincerely held religious beliefs compelled her to refuse the COVID-19 vaccine.

59. State action is not neutral toward religion when it proceeds in a manner that is intolerant of religious beliefs or restricts practices because of their religious nature.

60. State action is not generally applicable when it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individual exemptions. In addition, state action is not generally applicable when it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.

61. Defendant did not act neutrally toward religion. Despite the fact the Symphony's COVID-19 Vaccination Policy contemplates both medical and religious accommodations, Defendant denied Plaintiff's religious accommodation requests on the ground that no accommodations were possible. This exhibits an intolerance of and discrimination against religion.

62. Defendant could have accommodated Plaintiff's religious beliefs, observances and practices. Defendant did not actually undertake to thoroughly evaluate whether reasonable accommodations were possible on an individualized basis; rather, pursuant to a "culture" of vaccination, it categorically denied Plaintiff's requests.

63. Defendant had no compelling, substantial, legitimate, or rational interest in denying Plaintiff's requests for a religious accommodation.

64. Defendant's acts were neither narrowly tailored nor the least restrictive means of achieving an otherwise permissible government interest, which could have been achieved by other protective measures that did not violate Plaintiff's sincerely held religious beliefs, such as testing, masking, and physical distancing.

65. Defendant deprived Plaintiff of her First Amendment rights under color of state law.

66. Defendant's actions have caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiff. Plaintiff has no adequate remedy at law to prevent the continuing violation of her constitution and statutory liberties.

## JURY DEMAND

Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Anna Anderson, prays for entry of judgment in favor of Plaintiff and against Defendant, The City of Norfolk, Virginia in the form of the following relief:

    a. All equitable and legal relief available against the City under Title VII, including but not limited to back pay, front pay, actual damages, compensatory damages, consequential damages, punitive damages, pre-judgment interest, and reinstatement of Plaintiff's employment;

    b. All equitable and legal relief available against the City under § 1983, including but not limited to nominal damages, actual damages, compensatory damages, consequential damages, punitive damages, pre-judgment interest, and injunctive relief in the form of reinstatement of Plaintiff's employment;

      c.      Attorney's fees and court costs associated with this suit under 42 U.S.C. § 1988 (and Title VII); and

      g.      All other relief as may be appropriate to effectuate the purpose of justice.

Date: November 3, 2023                      Respectfully submitted,

                                              ANNA ANDERSON

                                              _____/s/_____
                                              Todd M. Gaynor, Esquire
                                              Virginia Bar No.: 47742
                                              GAYNOR LAW CENTER, P.C.
                                              440 Monticello Avenue, Suite 1800
                                              Norfolk, Virginia 23510
                                              PH: (757) 828-3739
                                              FX: (75) 257-3674
                                              EM: tgaynor@gaynorlawcenter.com

                                              *Counsel for Plaintiff*